UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LINDA GOODMAN,

                                  Plaintiff                        10-CV-0429Sr

v.

NIAGARA FRONTIER TRANSIT
METRO SYSTEM, INC.,

                                  Defendant.

_____

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment. Dkt. #27.

Plaintiff commenced this action seeking damages pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), alleging that she was terminated from her employment because of her color.[1] Dkt. #4.

Currently before the Court is defendant Niagara Frontier Transit Metro System, Inc.'s ("NFT Metro's") motion for summary judgment. Dkt. #6. For the following reasons, defendant's motion is granted.

---

[1] Although the complaint does not state plaintiff's color, plaintiff identifies herself as African American and black in other documents contained in the record before the court. Dkt. #22, p.5.

**BACKGROUND**

Plaintiff commenced employment with NFT Metro as a full-time bus operator on May 24, 2002.  Dkt. #7, ¶ 1.

On March 14, 2008, plaintiff turned the bus she was driving left from Church Street onto Lower Terrace Road (near the entrance to the Adams Mark Hotel), lost control of her bus and ran into another bus which was parked on Lower Terrace Road.  Dkt. #7, ¶ 5.  The accident was recorded on the surveillance cameras on board each of the buses.  Dkt. #9, ¶ 6.  The driver of the bus plaintiff hit and a passenger on the bus plaintiff was driving were transported to the hospital by ambulance.  Dkt. #7, ¶ 6.  The combined damage to the two buses exceeded $150,000.00.  Dkt. #7, ¶ 6.

Pursuant to the collective bargaining agreement between the Amalgamated Transit Union Local 1342 ("ATU Local 1342"), and NFT Metro, plaintiff's accident was reviewed by a five member Accident Review Committee composed of three drivers who are members of ATU Local 1342 and two management representatives.  Dkt. #7, ¶ 8.  The Accident Review Committee reviews the circumstances of bus accidents in accordance with the terms of the Bus Accident Reduction Program established pursuant to the collective bargaining process.  Dkt. #7, ¶¶ 7-8.  The Bus Accident Reduction Program assigns points to every preventable accident in accordance with a scale which accounts for personal injury, dollar value of property damage, factors outside of the operator's control which may have contributed to the accident, such as faulty equipment or weather conditions, and evidence of gross

negligence by the operator.  Dkt. #9, p.14.  Depending on the number of points an operator receives over the course of a twelve-month period, the operator may receive additional instruction from a supervisor, be required to attend defensive driving classes, or be subject to suspension or termination.  Dkt. #9, p.15.  An operator who accrues 12 points in a twelve-month period is terminated.  Dkt. #9, p.15.   Timothy Martin, Safety Quality Assurance Coordinator for NFT Metro, affirms that since he became a participant of the Accident Review Committee in 2005,

> no driver who accumulated 12 or more points within a 12 month period and thereby faced discharge under the Program was instead given a less severe disciplinary action.  Nor to date has the Union been successful in obtaining the reinstatement of a driver who was discharged according to the terms of the Program.

Dkt. #25, ¶ 9.

The Bus Accident Review Committee reviewed the circumstances of plaintiff's accident on April 10, 2008.  Dkt. #9, ¶ 11.  They reviewed the accident report and the surveillance videos and heard from plaintiff.  Dkt. #9, ¶ 11.  The Bus Accident Review Committee assessed plaintiff 10 points for being involved in an accident falling into the highest category of seriousness and 2 points for gross negligence.  Dkt. #9, ¶ 11.  As a result of plaintiff's accumulation of 13 points within a twelve-month period,[2] plaintiff's employment was terminated.  Dkt. #7, ¶ 12.  ATU Local 1342 filed a grievance on plaintiff's behalf, asserting that there was newly discovered evidence of a possible defect in the steering mechanism that should have been considered by the Accident

---

[2] Plaintiff was involved in 24 accidents during the course of her nearly 6-year tenure (including part-time employment), with NFT Metro. Dkt. #22, pp. 8-10. Half of those accidents were deemed non-preventable; the other half were assigned no more than 1 point per accident. Dkt. #22, pp.8-10.

Review Committee.  Dkt. #7, ¶ 14; Dkt. #9, ¶ 14.  The arbitrator determined that the Accident Review Committee should decide whether or not to review it's decision and the Accident Review Committee subsequently determined that the newly discovered evidence did not warrant further review.  Dkt. #7, ¶¶ 15-16.

Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR"), alleging that her termination was motivated by age, race and/or sex.  Dkt. #7, ¶ 17.  The NYSDHR issued a Determination and Order after Investigation finding no probable cause to believe that plaintiff had been discriminated against on the basis of her age, sex and/or race, but that she was "involved in an accident and was disciplined accordingly in the same fashion as all other employees."  Dkt. #9, p.36.  The Equal Employment Opportunity Commission adopted the findings of the NYSDHR and issued a Dismissal and Notice of Suit Rights on February 18, 2010.  Dkt. #22, p.1.

## DISCUSSION AND ANALYSIS

NFT Metro argues that plaintiff's termination was not an exercise of management discretion but the result of a collectively bargained process setting objective criteria for the discipline of operators involved in preventable accidents.  Dkt. #11, p.8.

Plaintiff contends that the review of her accident was rushed through the Accident Review Committee and that the Accident Review Committee made its decision without evidence suggesting mechanical problems with the bus.  Dkt. #7 & Dkt. #22,

p.5.  Plaintiff also asserts that other employees involved in accidents retained their employment, including a white male involved in a fatal bus accident; a woman who drove into a bank; a woman charged with drunk driving; a black woman who hit the back of a parked bus and a black woman who failed to activate the brake before exiting a bus with passengers on board.  Dkt. #7 & Dkt. #22, p.6.  Plaintiff complains that African Americans are terminated at a higher rate than other employees.  Dkt. #22, p.5.

NFT Metro replies that the male employee allegedly involved in a fatal bus accident was terminated after he tested positive for illegal drugs a second time, but notes that personnel records for this individual do not indicate a fatal accident.  Dkt. #25, ¶¶ 5-6.  With respect to the woman who allegedly drove into a bank, NFT Metro affirms that this employee was involved in one preventable accident which was assigned a point charge of 1.  Dkt. #25, ¶ 7.  With respect to the drunk driving incident, NFT Metro affirms that this incident occurred while the employee was off duty and was not subject to review under the Bus Accident Reduction Program.  Dkt. #25, ¶ 8.  NFT Metro argues that the retention of black female operators allegedly involved in accidents undermines plaintiff's claim of discrimination against African Americans.  Dkt. #25, ¶ 9.  NFT Metro also notes that more than half of it's bus drivers are African American.  Dkt. #23, pp.3-4.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *See Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Title VII of the Civil Rights Act**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

In the absence of direct evidence of discrimination, Title VII claims are analyzed pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, and its progeny. 411 U.S. 792, 802 (1973). This analysis requires a plaintiff to establish a *prima facie* case of discrimination by showing that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the circumstances of the adverse action give rise to an inference of discrimination on the basis of the individual's membership in that class. *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003); *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 91-92 (2d Cir.), *cert. denied*, 534 U.S. 951 (2001); *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir. 2000), *cert. denied,* 540 U.S. 811 (2003); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). The burden on the plaintiff at this stage of the analysis is *de minimis*. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981). Evidence of discrimination is not required. *James v. New York Racing Assoc.*, 233 F.3d 149, 153 (2d Cir. 2000).

If plaintiff meets this initial burden and establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant

to articulate a legitimate, non-discriminatory reason for the employment action. *Id.; See Burdine,* 450 U.S. at 254. "Any such stated purpose is sufficient to satisfy the defendant's burden of production; the employer does not have to persuade the court that the stated purpose was the actual reason for its decision." *Austin v. Ford Models, Inc.*, 149 F.3d 148, 153 (2d Cir. 1998), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 509 (2002).

If the employer carries this burden of production, the presumption raised by the *prima facie* case is rebutted and "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993). At this point, the case "becomes like any other case in that the plaintiff, in order to prevail, must have evidence from which the factfinder can reasonably find the essential elements of the claim." *James*, 233 F.3d at 154. Accordingly, in the context of a motion for summary judgment, the Court must examine the entire record to determine whether the plaintiff could satisfy her ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her. *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000). The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action. *Weinstock,* 224 F.3d at 42.

Plaintiff has produced no evidence from which the Court can discern a question of fact as to whether her color, or any other protected characteristic, played

any part in the decision to terminate her employment with NFT Metro.  *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."). To the contrary, the record before the Court demonstrates that plaintiff's termination was caused by the Accident Review Committee's determination to assess plaintiff 13 points following consideration of two preventable accidents over the course of twelve months, one of which resulted in the hospitalization of a passenger and another operator and caused more than $150,000.00 in damage to the two buses.  *See Collins v. New York City Transit Authority*, 305 F.3d 113, 119 (2d Cir. 2002) (termination based on determination of independent, neutral and unbiased process established by collective bargaining agreement "highly probative of the absence of discriminatory intent in that termination.").

Plaintiff has also failed to raise a question of fact as to whether the individuals alleged to have received more favorable treatment were similarly situated to plaintiff.  *See Mandell v. County of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003) (A showing of disparate treatment – that is, a showing that the employer treated plaintiff less favorably than a similar situated employee outside his protected group – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case.); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (plaintiff may raise inference of discrimination by demonstrating that the employer treated her less

favorably than a similarly situated employee outside her protected group).  The individuals named by plaintiff include a white male terminated after two positive drug tests, a white woman allegedly charged with DWI while off duty, and a woman involved in an a minor property damage accident without personal injury, none of which are remotely similar to plaintiff's circumstance.  Moreover, plaintiff's contention that two black women retained their employment despite being involved in bus accidents does not support her argument that black employees are terminated in circumstances in which white employees are retained.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that defendant's motion for summary judgment (Dkt. #6), is **GRANTED**.

The Clerk of the Court is directed to enter judgment in favor of defendant.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
              **December 2, 2011**

                                         s/ H. Kenneth Schroeder, Jr.
                                         **H. KENNETH SCHROEDER, JR.**
                                         **United States Magistrate Judge**